```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
MR. EDDIE C. CASH,
                                    :
                Plaintiff,
                                    :
          -against-
                                    :
MR. MICHAEL BROWN   and
NAKED PIZZA,                        :

                Defendants.         :
-----------------------------------x
```

REPORT & RECOMMENDATION

12 Civ. 4652 (LAK)(MHD)

TO THE HONORABLE LEWIS A. KAPLAN,
UNITED STATES DISTRICT JUDGE:

Plaintiff, appearing pro se, brings this action pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e-17, alleging discrimination on the basis of race by his employer, Naked Pizza, and specifically by his supervisor, Michael Brown ("Brown"). Because plaintiff has failed to state a claim upon which relief can be granted, we recommend that the complaint be dismissed with prejudice.

## STANDARD OF REVIEW

The Court has the authority to screen sua sponte an in forma pauperis complaint at any time and must dismiss the complaint, or portion thereof, that states a frivolous or malicious claim, fails to state a claim upon which relief may be

1

granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); see Livingston v. Adirondack Beverage Co., 141 F.3d 434, 437 (2d Cir. 1998). While the law authorizes dismissal on any of these grounds, district courts "remain obligated to construe a pro se complaint liberally." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). Thus, pro se complaints should be read with "special solicitude" and should be interpreted to raise the "strongest [claims] that they suggest." Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 474-75 (2d Cir. 2006) (citations omitted) (per curiam).

## PROCEDURAL HISTORY

Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and received a "Notice of Right to Sue" letter on March 7, 2012. (See Mar. 7, 2012 Letter and Notice of Right to Sue annexed to Compl.). Plaintiff filed his complaint on June 13, 2012, asserting one or more claims under Title VII and naming Brown as the sole defendant. The complaint alleged in substance, and without further elucidation, that Brown had called plaintiff "Bubba" on one occasion and had laughed while doing so, and that this moniker had so upset plaintiff that he quit his job. In a Report and Recommendation dated August 13, 2012, we held that this

pleading was insufficient to state a viable claim under Title VII and recommended that the District Court direct plaintiff to submit an amended complaint within thirty days that specified plaintiff's race and provided facts from which an inference could be made that his employer had discriminated against him because of his race, in violation of Title VII. (See Report & Recommendation, dated Aug. 13, 2012 (Dkt. No. 10) at 9). We also directed plaintiff to name his employer as the proper defendant. (See id.). The District Court adopted the report and recommendation on September 5, 2012. (See Order, dated Sept. 5, 2012 (Dkt. No. 11) at 1).

On October 5, 2012, plaintiff filed an amended complaint naming both Naked Pizza and Michael Brown as defendants. (See Amended Complaint, dated Oct. 5, 2012 (Dkt. No. 12) ("Am. Compl.")). In that pleading, plaintiff identifies himself as an African American who worked as a delivery person for Naked Pizza at the time of the alleged events and alleges that on December 14, 2011,[1] defendant Brown, his Caucasian supervisor, began to

---

[1] The dates in plaintiff's amended complaint are somewhat confusing. In one section he states that the date the alleged name-calling began was December 14, 2011. (See id. at ¶ II E). However, elsewhere plaintiff states that he was not hired by Brown as a pizza delivery person until December 15, 2011. (See id. at 5).

3

call him "Bubba." (Am. Compl. ¶ II E, 5).[2] When plaintiff asked Brown why he called him that name, Brown responded, "For my love and affection," and then started laughing. (Id. at ¶ II E).

Plaintiff states that the term "Bubba" is an offensive term to African Americans. (Id. at 5). According to plaintiff, the term carries a negative connotation and is also considered a prison term, signifying "bully." (Id.). Plaintiff told Brown that his name was not "Bubba," and asked Brown not to call him by that name but to use his actual name, because he found the term to be derogatory. (Id. at ¶ II E). He states that Brown did not stop using the term, but instead appeared to display a more hostile attitude toward plaintiff. (Id. at 5). Plaintiff notes that he did not observe Brown refer to any non-African American person in a similarly derogatory manner. (Id.).

Plaintiff states that he felt intimidated, humiliated, and embarrassed by this treatment. (Id.). He alleges that because Brown did not respect his desire not to be referred to as "Bubba," he could not continue to be subjected to such hostile treatment and contends that he had no choice but to resign his

---

[2] Plaintiff also attaches an additional page of information to the Court's general Complaint for Employment Discrimination form, which he is using as his Amended Complaint. This page is referred to as page 5.

position. (Id.). Plaintiff believes that Brown treated him disparately "due to his race/color" and forced plaintiff to resign. (Id.).

As to plaintiff's request for relief, he states, "I know I would have never left this job I am seeking [sic] 1,000000 mental anguish." (Id. at ¶ IV).

## DISCUSSION

### A. Rule 8 Pleading Requirements

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires "a short and plain statement of the claim showing that the pleader is entitled to relief," and Rule 8(d)(1) requires that each allegation be "simple, concise, and direct." In a clarification of Rule 8's pleading standard, the United States Supreme Court held that:

> a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556, 570 (2007)). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." Id. at 678 (internal quotation marks and citation omitted). This plausibility standard applies to all civil actions, id. at 684, including pro se pleadings. Okoh v. Sullivan, 441 Fed. App'x 813, 814 (2d Cir. 2011).

With respect to pleadings in employment discrimination cases, under the Supreme Court's decision in Swierkiewicz v. Sorema N.A., 534 U.S. 506, 510-13 (2002), a plaintiff need not necessarily allege specific facts establishing a prima facie case of discrimination under the standard set forth in McDonnell Douglas v. Green, 411 U.S. 792 (1973).[3] Rather, "the ordinary rules for assessing the sufficiency of a complaint apply." Swierkiewicz, 534 U.S. at 511; see also Williams v. N.Y.C. Housing Auth., 458 F.3d 67, 72 (2d Cir. 2006) (per curiam) (applying Swierkiewicz to retaliation claims); Leibowitz v. Cornell Univ., 445 F.3d

---

[3] Under McDonnell Douglas, a prima facie case of discrimination requires a showing of: (1) membership in a protected class; (2) qualification for the position; (3) an adverse employment action; and (4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination. See Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000) (citing McDonnell Douglas, 411 U.S. at 802).

586, 591 (2d Cir. 2006) (per curiam) (applying Swierkiewicz to discrimination claims under Title VII). An employment discrimination action containing "a short and plain statement of the claim showing that the pleader is entitled to relief," thereby giving "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," is sufficient to satisfy the requirements of Rule 8. Swierkiewicz, 534 U.S. at 512. Nonetheless, as noted, the claim, as pled, must be plausible, and hence the plaintiff must include such factual matter in his complaint as will demonstrate at least the facial plausibility of the claim. See, e.g., Jackson v. County of Rockland, 450 Fed. App'x 15, 19 (2d Cir. 2011) (noting that Swierkiewicz held that "ordinary rules" for pleading apply to employment discrimination claims and applying Iqbal as that "ordinary standard" in dismissing plaintiff's claims, as she failed to support her "bald assertions of discrimination and retaliation" with "comments, actions, or examples" from which the court could infer a discriminatory or retaliatory motive); Hedges v. Town of Madison, 456 Fed. App'x 22, 23 (2d Cir. 2012) (discussing Swierkiewicz and suggesting that a plaintiff must meet the standard of pleading articulated in Twombly, even if a prima facie case is not required);

see also Twombly, 550 U.S. at 569-70; Boykin v. KeyCorp, 521 F.3d 202, 213 (2d Cir. 2008).

B. **Title VII Claims**

Title VII provides that "[i]t shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). This anti-discrimination provision prohibits employers from mistreating an individual because of the individual's protected characteristics. Patane v. Clark, 508 F.3d 106, 112 (2d Cir. 2007) (per curiam).

As we must read pro se plaintiff's submission to raise the strongest arguments it suggests, Triestman, 470 F.3d at 474-75, plaintiff could be making three possible claims: hostile work environment, constructive discharge, and unequal treatment.[4] For the reasons that follow, he fails to

---

[4] It should be noted that plaintiff, in his amended complaint, selected the "Age Discrimination in Employment Act" in the

allege sufficiently plausible facts for us to draw a reasonable inference that defendant is liable under any of these three theories for the alleged misconduct. See Iqbal, 556 U.S. at 678.

### 1. Hostile Work Environment

Plaintiff's allegations are insufficient to state a plausible claim of hostile work environment under Title VII. Plaintiff claims discrimination because of defendant Brown's repeated use of the name "Bubba." He proffers that "Bubba" has derogatory racial connotations, and that Brown never used this term with any non-African American employees. (See Am. Compl. 5). Plaintiff asserts that he was forced to resign his position at Naked Pizza because the name-calling caused him to feel intimidated and humiliated. (See id.).

Title VII does not protect employees from "the ordinary tribulations of the workplace, such as the

---

section specifying the law upon which his claim is based. (See Am. Compl. 1). As plaintiff makes no claims relating to age discrimination, and there are no facts alleged in his complaint that would support a claim under the ADEA, we can only assume that this is a mistake, and that he intended to select "Title VII". Therefore, we decline to address any possible age discrimination claims.

sporadic use of abusive language." <u>Faragher v. City of Boca Raton</u>, 524 U.S. 774, 788 (1998) (internal quotations omitted). To state a claim for hostile environment, a plaintiff must allege some facts indicating that the workplace was "permeated with discriminatory intimidation, ridicule, and insult . . . that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." <u>Howley v. Town of Stratford</u>, 217 F.3d 141, 153 (2d Cir. 2000).

Apart from the fact that the racial connotations of the name "Bubba" are not apparent,[5] plaintiff fails to plead

---

[5] An online search of the term "Bubba" did not reveal any references relating to African Americans, negative or otherwise. To the contrary, Merriam Webster's Online Dictionary defines "Bubba" as "a stereotypical nickname of Southern white males," and is an "often disparaging" word, synonymous with "redneck." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/bubba (last visited Nov. 28, 2012). <u>See also</u> ONLINE ETYMOLOGY DICTIONARY, http://www.etymonline.com/index.php?term=bubba (last visited Nov. 29, 2012) (defining the term as "Southern U.S. slang, 1860s, a corruption of brother"); WIKIPEDIA, http://en.wikipedia.org/wiki/Bubba (last visited Nov. 29, 2012) (citing multiple definitions of "Bubba" including "a relationship nickname formed from 'brother' and given to boys, especially eldest male siblings, to indicate their role in a family", "a person of low economic status and limited education", "a lay soldier, similar to 'grunt' but with connotations of endearment instead of derision", "a person, especially a man, who is overweight", and "a large, physically

10

the level of racial animus necessary for a valid Title VII claim. For "racist comments, slurs, and jokes" to be actionable as a hostile work environment, there generally "must be more than a few isolated incidents of racial enmity." Davis-Bell v. Columbia Univ., 851 F. Supp. 2d 650, 673 (S.D.N.Y. 2012) (quoting Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir. 1997). "Instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments." Id. (quoting Brown v. Coach Stores, Inc., 163 F.3d 706, 713 (2d Cir. 1998) (finding no hostile work environment where supervisor made, on occasion, racist remarks, including one directed at plaintiff)).

Plaintiff's claim that defendant Brown called him "Bubba" does not suggest "either that a single incident was extraordinarily severe, or that a series of incidents were sufficiently continuous and concerted to have altered the conditions of [his] working environment." Alfano v. Costello, 294 F.3d 365, 374 (2d Cir. 2002) (citation and internal quotations marks omitted). Although plaintiff may have been offended by being called "Bubba," "Title VII does not establish a 'general civility code' for the American

---

powerful inmate [] who will become forcibly sexually intimate with [new male prisoners]").

11

workplace" entitling him to relief. Petrosino v. Bell Atlantic, 385 F.3d 210, 223 (2d Cir. 2004) (citation omitted). Moreover, the severity of the offensive incident is not determined by plaintiff's response to it. Malone v. City of New York, 2006 WL 2524197, at *6 (E.D.N.Y. Aug. 30, 2006). From an objective perspective, plaintiff has not pled any incident or series of incidents that was severe or pervasive enough to alter the terms and conditions of his employment. Therefore, he fails to state a claim for hostile work environment.

### 2.  Constructive Discharge

Plaintiff also fails to state a claim for constructive discharge. Constructive discharge is a subset of a claim for hostile work environment, and therefore conditions that do not qualify as a hostile work environment under Title VII are, by definition, not sufficiently intolerable to force an employee to quit. Zick v. Waterfront Comm'n of New York Harbor, 2012 WL 4785703, at *7 (S.D.N.Y. Oct. 4, 2012); see also Davis-Bell, 851 F. Supp.2d at 672 ("The standard for a hostile work environment claim is 'demanding,' and the plaintiff must prove that the conduct was 'offensive, pervasive, and continuous enough to amount

12

to a constructive discharge.'") (internal citations omitted).

For a court to consider constructive discharge, a plaintiff must show that the employer "intentionally create[d] a work atmosphere so intolerable that [the employee] is forced to quit involuntarily." Terry v. Ashcroft, 336 F.3d 128, 151-52 (2d Cir. 2003) (holding that allegations of constructive discharge, "viewed as a whole, [must be] so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign"). "Whether working conditions are sufficiently intolerable to constitute a constructive discharge 'is assessed objectively by reference to a reasonable person in the employee's position.'" Borski v. Staten Island Rapid Transit, 413 Fed. App'x 409, 411 (2d Cir. 2011) (quoting Petrosino, 385 F.3d at 230). The standard for constructive discharge is a demanding one because it "cannot be proven merely by evidence that an employee . . . preferred not to continue working for that employer . . . [or that] the employee's working conditions were difficult or unpleasant." Madray v. Long Island Univ., 789 F. Supp. 2d 403, 409-10 (E.D.N.Y. 2011) (quoting Spence v. Maryland Cas. Co., 995 F.2d 1147, 1156 (2d Cir. 1993)).

13

Though plaintiff was offended by being called "Bubba" repeatedly by his supervisor, and though this name calling was the alleged reason that plaintiff quit his job at Naked Pizza, these conditions were not sufficiently intolerable to constitute a constructive discharge. As stated above, conditions that are insufficient to qualify as a hostile work environment cannot amount to constructive discharge. Therefore, plaintiff has failed to allege facts that would allow us to infer that his working conditions were so intolerable as to cause a reasonable person to be forced to resign.

### 3. Unequal/Disparate Treatment

The same events supporting a hostile work environment claim under Title VII may also form the basis for a claim of disparate treatment. Gregory v. Daly, 243 F.3d 687, 697 (2d Cir. 2001). To prevail on a Title VII disparate treatment claim, a plaintiff must prove that (1) he is a member of a protected class; (2) he is competent to perform his job or is performing his duties satisfactorily; (3) he suffered an adverse employment decision or action; and (4) the decision or action occurred under circumstances giving rise to an inference of discrimination. La Grande v.

DeCrescente Distributing Co. Inc., 370 Fed. App'x 206, 211 (2d Cir. 2010) (citing Dawson v. Bumble & Bumble, 398 F.3d 211, 216 (2d Cir. 2005)). As stated above, it is not necessary that plaintiff plead a prima facie case of disparate treatment; he need only give "the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, even taking into account the less stringent standards applied to pro se pleadings and the liberal pleading standard in general, plaintiff has not alleged facts that, if true, would be sufficient to support a finding of disparate treatment. Though he has pled that he is a member of a protected class, and we will assume, for the purposes of this pleading, that his work was satisfactory, plaintiff fails to plead any facts demonstrating that he suffered an adverse employment action.

Even under the lenient pleading standards of Swierkiewicz, a plaintiff must allege some sort of employment-related action that could give rise to relief under Title VII. Malone, 2006 WL 2524197 at *6. Though pleading an adverse employment action is not per se necessary to withstand dismissal, see Leibowitz v. Cornell

15

Univ., 445 F.3d 586, 591 (2d Cir. 2006), a plaintiff must still allege some sort of injury that could, when fleshed out by discovery, rise to the level of an adverse employment action and thus sustain a disparate treatment claim. Malone, 2006 WL 2524197 at *6; see also King v. U.S. Sec. Assocs., 2012 WL 4122025, at *5, 8 (S.D.N.Y. Aug. 22, 2012). An adverse employment action is a "materially adverse change in the terms and conditions of employment [that] is more disruptive than a mere inconvenience or an alteration of job responsibilities." Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006) (quoting Fairbrother v. Morrison, 412 F.3d 39, 56 (2d Cir. 2005)). "Examples of materially adverse changes include termination of employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices . . . unique to a particular situation." Id.

Absent from plaintiff's allegations is any specific decision (e.g., firing, demotion, failure to hire or promote) that is alleged to have been made by his supervisor or employer, whether on the basis of race or not. See Malone v. New York Pressman's Union No. 2, 2011 WL

16

2150551, at *6 (S.D.N.Y. May 31, 2011). On the contrary, plaintiff has merely alleged that he voluntarily quit his job at Naked Pizza because he was offended by Brown's name calling. (See Am. Compl. 5). Comments by a supervisor, whether critical or otherwise, do not constitute an adverse employment action. See, e.g., King, 2012 WL 4122025 at *8 (citing cases). The only possible ground for an adverse employment action on these facts is plaintiff's resignation, but, as explained above, plaintiff has failed to put forward sufficient allegations showing that his environment had become so intolerable that his resignation constituted a constructive discharge. See, e.g., Hunter v. County of Albany, 834 F. Supp. 2d 86, 93 (N.D.N.Y. 2011) (dismissing plaintiff's claim of disparate treatment where he voluntarily resigned due to racial epithets and name calling, because of lack of evidence showing constructive discharge).

## CONCLUSION

Where, as here, "the Court has explained in detail the defects in the original complaint[], instructed plaintiff on how to rectify [his] claim and afforded [him] an opportunity to do so in a second amended complaint,

17

dismissal with prejudice is justified." Jackson v. New York State Dept. of Labor, 2012 WL 843631, at *2 (S.D.N.Y. Mar. 12, 2012) (citing Blakely v. Wells, 209 Fed. App'x 18, 20-21 (2d Cir. 2006)). Plaintiff has failed to state a claim upon which relief can be granted, and therefore we respectfully recommend that his complaint be dismissed with prejudice.

Finally, we recommend that the Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith, and that in forma pauperis status therefore be denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).


Dated: New York, New York
       November 29, 2012


                                    SO ORDERED.

                                    _____
                                    MICHAEL H. DOLINGER
                                    UNITED STATES MAGISTRATE JUDGE

Copies of the foregoing Order have been sent today to:

Mr. Eddie C. Cash
1871 7th Ave.
Apt. 7E
New York, NY 10026

<u>Pro</u> <u>Se</u> Staff Attorney
United States District Court, Southern District of New York
500 Pearl Street, Room 230
New York, NY 10007-1312